UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**KELLY FRIAR,**

    **Plaintiff,**

v.                                                                             CASE NO.:   8:20-cv-02226

**WASHLAVA, INC.,**
a Delaware corporation and **TODD BELVEAL**, an individual,

    **Defendants.**
_____/

**COMPLAINT FOR DAMAGES, EQUITABLE RELIEF,
AND DEMAND FOR JURY TRIAL**

    **COMES NOW**, Plaintiff KELLY FRIAR, by and through her undersigned counsel, hereby files this Complaint for Damages, Equitable Relief, and Demand for Jury Trial against Defendant WASHLAVA, INC., a Delaware corporation ("WASHLAVA"), and TODD BELVEAL, an individual ("BELVEAL") (collectively referred to as "Defendants") and states the following:

**INTRODUCTION**

    This is an action for damages in excess of $60,000, injunctive relief, and declaratory relief against Defendants to address unpaid minimum wage, overtime, and retaliation under the Fair Labor Standards Act ("FLSA") 29 U.S.C. § 201, *et seq.*, as well as supplemental claims under Florida law for Breach of Contract, Breach of the Implied Duty of Good Faith and Fair Dealing, Unjust Enrichment, and the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") § 501.202, Florida Statutes, and Fraudulent Inducement for which this Court has jurisdiction pursuant to 28 U.S.C. § 1367.

    In their improper efforts to remain competitive in business, Defendants violated the law, including but not limited to duping Plaintiff out of earned wages amounting to more than $60,000.

Page 1 of 19

## JURISDICTION, VENUE, AND PARTIES

1. Defendants regularly keep an office and transact a substantial amount of business within the boundaries of Hillsborough County, Florida.

2. At all times material hereto, Plaintiff was a resident of Hillsborough County in the State of Florida. Plaintiff was and is a covered individual under the FLSA, the applicable common laws, and FDUTPA.

3. Defendant WASHLAVA and Defendant BELVEAL ("Defendants") are organized under the laws of the State of Florida and registered and licensed to do business in Florida.

4. Defendant WASHLAVA was Plaintiff's employer within the scope of the FLSA, and FDUTPA, and the applicable common laws during the times relevant to the facts within this Complaint.

5. At all times material hereto, Defendant BELVEAL had the authority to determine and impact the terms and conditions of Plaintiff's employment, including determining and remitting her compensation, and terminating her employment.

6. At all times material hereto, Defendant BELVEAL was the Owner and President of Defendant WASHLAVA, and engaged in day to day operations.

7. At all times material hereto, Defendants transacted business and performed services in Hillsborough County, Florida.

8. Defendant WASHLAVA is a covered enterprise under the FLSA.

9. Defendant BELVEAL is the owner, shareholder, and officer of Defendant WASHLAVA with operational control and he acted directly in the interests of WASHLAVA in relation to Plaintiff's employment, and served as Plaintiff's direct supervisor.

10. Upon information and belief, Defendant BELVEAL usurped the assets of Defendant WASHLAVA for personal use, engaged in waste of WASHLAVA assets, and/or wrongfully and

distributed WASHLAVA assets without proper consideration for creditors such as Plaintiff, and as a result, Defendant BELVEAL should be held personally liable to Plaintiff for damages attributable to Defendant WASHLAVA.

11. As a result, Defendant BELVEAL meets the FLSA definition of "employer", and Defendant BELVEAL is jointly and severally liable under the FLSA for Plaintiff's damages.

## STATEMENT OF FACTS

12. In February and March of 2019 Plaintiff and Defendants discussed on several occasions that WASHLAVA required a Chief Marketing Officer for which Plaintiff would be a good fit.

13. In October of 2019, Defendant BELVEAL telephoned Plaintiff to tell her he had just finalized a significant amount of investment, and had just received six millions dollars ($6,000,000.00) of additional funding and was therefore ready to hire Plaintiff as Defendant WASHLAVA's Chief Marketing Officer. Defendant BELVEAL ensured to Plaintiff that Defendants were on solid financial footing and had sixteen million dollars ($16,000,000.00) total in the capital table. Defendant BELVEAL stated that business was expanding quickly and WASHLAVA would be securing office space very soon. Defendant BELVEAL stated that with Plaintiff receiving an equity stake she would make millions because WASHLAVA was currently valued at thirty-six million dollars ($36,000,000.00) and growing.

14. As such, Plaintiff left a secure and well-paying job that she had maintained for nearly ten years in reliance on Defendant BELVEAL's promises and representations regarding Defendant WASHLAVA. Plaintiff was officially hired on October 15, 2019 to start with WASHLAVA on November 6, 2019. *See Exhibit A, Offer Letter*.

15. Plaintiff was hired to perform a marketing role but initially also filled sales role until a Sales Director was hired in January of 2020.

16. In February of 2020, Defendant BELVEAL traveled to San Francisco for approximately four weeks for the alleged purpose of raising necessary capital for Defendant WASHLAVA. However, Defendant BELVEAL expressed he was not successful.

17. In March of 2020, Plaintiff also attempted to raise additional capital by bringing in two contacts interested in investing in WASHLAVA. Both contacts were passed along to Defendant BELVEAL after the initial interest phase. However, after speaking with Defendant BELVEAL both contacts did not result in additional capital.

18. Also in March of 2020, the leadership team (consisting of Plaintiff, Defendant BELVEAL, Managing Director of Higher Education/Sales Director Sean Pomeroy, and Controller Bill McRae) met with Defendant BELVEAL who determined that two additional staff members would be hired to join WASHLAVA.

19. In April of 2020, the leadership team met again regarding the current financial state of the company. The meeting was called by Defendant BELVEAL where he expressed the company was in a "sticky situation" and needed to gain necessary capital quickly.

20. At the end of April 2020, just a couple of days before payroll was due, Defendant BELVEAL called the leadership team via Zoom to notify that each were forced to take a "voluntary 100% salary deferral" for the month of May while he worked out a "capital deal". *See Exhibit B, Deferral Agreement.* Defendant BELVEAL ensured the leadership team that this non-payment (that he termed a "deferral") would be resolved by the end of May, with each employee paid up by that time, if not earlier.

21. Also in April, Defendant WASHLAVA applied for and received funds from the Paycheck Protection Program but yet Plaintiff and other employees did not receive paychecks. This is certainly because Defendants WASHLAVA and BELVEAL's financial struggles were separate and distinct from those experienced by so many businesses legitimately caused by the COVID-19

pandemic economy.

22. In mid-June 2020, Defendant BELVEAL called another leadership meeting to address the May deferral agreements. Defendant BELVEAL stated he needed each member of the leadership team to continue taking 100% deferrals or request to be furloughed. However, Defendant BELVEAL pressed that to request a furlough would be the wrong decision and that he would soon have this "deferral" issue resolved very soon, and definitely by July.

23. Defendant BELVEAL continued on stating that such nonpayment was merely the typical nature of a startup company. He promised the nonpayment would be resolved and that he was doing all the right things to get it resolved quickly.

24. However, in July 2020, Plaintiff, as well as other members of the leadership team, had still not been paid any money although they continued to work full-time. Defendant BELVEAL stated he had a plan to get each of them properly compensated and that such would not be an issue beyond August 31, 2020.

25. Having not received a second deferral agreement in writing, Plaintiff pressed for Defendant BELVEAL to send the deferral agreement for June and July. Defendant BELVEAL therefore sent Plaintiff the second agreement that included June, July, and August, and stating Plaintiff would be completed paid up by September 1, 2020. *See Exhibit C, Second Deferral Agreement.*

26. In or around late July/early August, Plaintiff called Defendant BELVEAL on the phone to discuss the plan for resolving the deferred compensation and moving the company forward. During that call Defendant BELVEAL revealed to Plaintiff that he was hoping to soon sell the company, which would likely mean Plaintiff would not ever receive full payment for the full-time work she performed for the past several months but that he would "put in a good word" for her and that Plaintiff ought "not to get cute and ask for it," but to "just take whatever equity was

offered" to her.

27. During the same conversation, Defendant BELVEAL boasted that if Plaintiff attempted to pursue payment for her several months of unpaid wages he would just file for bankruptcy protection and then Plaintiff would "get nothing." Defendant BELVEAL assured Plaintiff that her "best bet is to just hang in there."

28. Defendant BELVEAL also boasted that he intentionally rented his home and any personal property, and that he had one million dollars ($1,000,000.00) in a safe deposit box as well as money hidden away in the Bahamas because "that's the smart thing to do." Defendant BELVEAL stated on several occasions that he had plenty of personal money but that he would watch WASHLAVA run into the ground before investing more personal money into the company.

29. On August 31, 2020 Managing Director of Higher Education/Sales Director Sean Pomeroy and Plaintiff called a meeting with Defendant BELVEAL to address the exceedingly overdue compensation and to ask for a plan for moving forward with the promises previously made regarding their equity interest.

30. Instead, Defendant BELVEAL stated he was more focused on doing an asset acquisition deal with Bob Leonard who owned the rights to Defendant WASHLAVA's second generation of app technology. Defendant BELVEAL boasted that he was now waiting on the bank that held his debt round to release the debt into equity so that he could then transfer the company to Mr. Leonard's control. As stated, Defendant BELVEAL intended to effectively permanently deprive Plaintiff of her backpay and equity interest.

31. In response, Plaintiff and Mr. Pomeroy stated they needed to be paid back, given a plan for moving the company forward, and be provided with a plan for receiving full payment of their compensation that had now been deferred for four months.

32. At one point during the August 31 conversation, Plaintiff asked Defendant

BELVEAL, "Doesn't anyone feel a personal responsibility to pay me what I am owed?" Defendant BELVEAL merely responded, "No."

33. On September 1, 2020 Defendant BELVEAL called Plaintiff to let her know it seemed from his perspective that finances were Plaintiff's "biggest stressor" and so his plan to ensure she eventually got paid was to go ahead and indefinitely furlough her so she could collect unemployment. He then joked that surely unemployment would cover a mortgage payment on a house in Seminole Heights.

34. Defendant BELVEAL made no real effort to actually pay Plaintiff's overdue "deferred compensation."

35. For the foregoing reasons, Plaintiff has been damaged as a result of Defendants' violations of the FDUTPA, the FLSA, and the applicable common laws.

## COUNT I
## VIOLATIONS OF FAIR LABOR STANDARDS ACT
## AGAINST DEFENDANT WASHLAVA and DEFENDANT BELVEAL

36. Plaintiff re-alleges paragraphs 1 through 35 of this Complaint.

37. This is a civil action for relief under the Fair Labor Standards Act, as amended, 29 U.S.C. § 216(b) ("FLSA"), and brought to recover minimum wage, overtime compensation, liquidated damages, costs, and reasonable attorneys' fees.

38. At all times relevant to this Complaint, Defendants owned and operated a business engaged in commerce as defined in the FLSA, 29 U.S.C. §§ 203(r) and 203(s).

39. Defendants operated a business that hired employees to procure commercial laundry equipment, design and install technology for control and payment via a smart phone app, sold the commercial laundry equipment to various colleges and other entities throughout the United States, and solicited investors throughout the United States.

40. Defendants procured equipment from LG Electronics based in New Jersey, Defendants rented a facility in Tennessee for storage of the purchased equipment, and Defendants sold such equipment to multiple universities including Georgia Tech University, Eastern Illinois University, University of Iowa, Monmouth University, and the Massachusetts Institute of Technology.

41. Upon knowledge and belief, Defendant WASHLAVA's annual sales revenue from its clients exceeded $500,000.00.

42. At all times relevant to this Complaint, Defendant WASHLAVA had multiple employees who regularly sold, handled, or otherwise worked on materials that had been moved in or produced for commerce.

43. During employment with Defendants, Plaintiff was employed as an exempt Chief Marketing Officer, at a regular rate of $2,644.23 per week, and Plaintiff regularly worked in excess of forty hours.

44. In 2020, Defendants failed to pay Plaintiff any wages at all for seventeen work weeks from May 4, 2020 to August 24, 2020.

45. During those weeks, Plaintiff did not receive the required minimum salary for an exempt employee, as defined in Section 13(a)(1) of the FLSA and 29 C.F.R. Part 541.

46. During those weeks, because Plaintiff did not receive the required salary for an exempt employee, Plaintiff's job was non-exempt.

47. During employment with Defendants, Plaintiff was a covered individual under the FLSA.

48. During those weeks, Plaintiff did not receive overtime compensation equal to one and one-half of her regular rate of pay for all hours worked in excess of forty (40) hours.

49. Furthermore, Plaintiff did not earn at least minimum wage for the weeks in which

he did not receive any payment for the hours he worked.

50. All records, if any, concerning the number of hours and compensation paid to Plaintiff are in the possession and custody of Defendants.

51. Defendants sent Plaintiff a several letters stating that they were intentionally holding back Plaintiff's pay. On August 31, 2020, Plaintiff complained to Defendant Belveal that she had not received payment of wages in several months, and informed Defendant Belveal that she was not able to continue working without wages.

52. Because Defendants' actions were intentional, willful and unlawful, their failure to pay Plaintiff constitutes bad faith and Plaintiff is entitled to liquidated damages in an amount equal to minimum wage and overtime owed by Defendants in addition to his regular rate.

**WHEREFORE**, Plaintiff demands:

    a. Compensation for unpaid minimum wages and unpaid overtime wages;

    b. Liquidated damages in an amount equal to unpaid wages;

    c. All costs and attorney's fees incurred in prosecuting these claims; and

    d. All further relief as this Court deems just and equitable

## COUNT II
## RETALIATION IN VIOLATION OF FAIR LABOR STANDARDS ACT
## AGAINST DEFENDANT WASHLAVA and DEFENDANT BELVEAL

53. Plaintiff re-alleges paragraphs 1 through 52 of this Complaint.

54. Defendants deferred Plaintiff's wages for several months but continued to assert that her wages would be paid by, on, or before September 1, 2020.

55. On August 31, 2020, Plaintiff complained to Defendant BELVEAL that she had not been paid for several months, she informed Defendant BELVEAL that it was unlawful for Defendants to require her to continue working without wages, and Defendant BELVEAL informed Plaintiff that she would not receive her wages as had previously been agreed.

56. Defendant BELVEAL then terminated Plaintiff by putting her on a furlough with no end in sight so she "could collect unemployment compensation."

57. § 216(b) and § 215(a)(3) of the FLSA make it unlawful for any employer to terminate an employee for complaining about and/or reporting wage and overtime violations.

58. Defendants terminated Plaintiff without notice in the middle of the COVID-19 pandemic, after withholding her wages for seventeen (17) weeks, knowing that Plaintiff had a family and that she had been suffering financial hardship due to Defendants' withholding her compensation.

59. Plaintiff has suffered emotional distress and mental anguish due to Defendants' willful, outrageous, and retaliatory actions, and such damages are recoverable in FLSA retaliation claims.

60. Available damages under the FLSA damages attempt to put Plaintiff in the same place she would have been absent Defendants' misconduct, and therefore permit Plaintiff to recover both economic and compensatory damages.

**WHEREFORE**, Plaintiff demands:

a. Compensation for unpaid wages, lost wages, benefits, and other remuneration;

b. Reinstatement of Plaintiff to a position comparable to Plaintiff's prior position, or in the alternative front pay;

c. Compensatory damages, including emotional distress, allowable at law;

d. Prejudgment interest on all monetary recovery obtained;

e. All costs and attorney's fees incurred in prosecuting these claims; and

f. All further relief as this Court deems just and equitable

## COUNT III – BREACH OF CONTRACT –
## AND PURSUANT TO § 448.08 FLORIDA STATUTES FOR UNPAID WAGES
## AGAINST DEFENDANT WASHLAVA

61. Plaintiff re-alleges paragraphs 1 through 60.

62. Plaintiff relied on Defendants' implied promise that Plaintiff would be compensated in compliance with both Federal and Florida law.

63. Based on these promises, Plaintiff worked for Defendants as agreed.

64. Defendants' breached their contracts with and/or promise to Plaintiff by failing to pay Plaintiff the wages she was promised for seventeen (17) weeks of work.

65. Defendant WASHLAVA has failed to pay amounts due and owing pursuant to the terms of the applicable compensation agreements, which constitutes material breach of the agreements and for which Plaintiff has suffered damages.

66. Plaintiff is entitled to legal and injunctive relief as a result of Defendants' actions.

**WHEREFORE**, Plaintiff demands:

    a.    Compensation for unpaid wages, lost wages, benefits, and other remuneration;

    b.    Reinstatement of Plaintiff to a position comparable to Plaintiff's prior position, or in the alternative front pay;

    c.    Specific performance;

    d.    Compensatory damages, including emotional distress, as allowable by law;

    e.    Prejudgment interest on all monetary recovery obtained;

    f.    All costs and attorney's fees incurred in prosecuting these claims pursuant to section 448.08, Florida Statutes; and

    g.    All further relief as this Court deems just and equitable

## COUNT IV – BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING AGAINST DEFENDANT WASHLAVA

67.     Plaintiff re-alleges paragraphs 1 through 66.

68.     Defendant used manipulative devices to avoid compensating Plaintiff as contractually required and then terminating Plaintiff's employment as a further effort to deny payment to Plaintiff.

69.     A duty of good faith and fair dealing is implicit in all enforceable contracts under Florida law, and implied in the performance of every term of an express contract.

70.     Defendant's refusal to compensate Plaintiff as contractually required, requiring Plaintiff to agree to new terms and conditions under duress and through use of other manipulative devices, and termination of Plaintiff's employment under false pretenses constitutes bad faith and unfair dealing.

71.     Plaintiff has been and continues to be injured by Defendant's bad faith and unfair dealing.

   **WHEREFORE**, Plaintiff demands:

   a.   Compensation for unpaid wages, lost wages, benefits, and other remuneration;

   b.   Reinstatement of Plaintiff to a position comparable to Plaintiff's prior position, or in the alternative front pay;

   c.   Compensatory damages, including emotional distress, allowable at law;

   d.   Prejudgment interest on all monetary recovery obtained;

   e.   All costs and attorney's fees incurred in prosecuting these claims; and

   f.   All further relief as this Court deems just and equitable

## COUNT V– FRAUDULENT INDUCEMENT
## (FRAUDULENT MISREPRESENTATION)
## AGAINST DEFENDANT WASHLAVA and DEFENDANT BELVEAL

72. Plaintiff re-alleges paragraphs 1 through 71 as if fully alleged herein.

73. At all times, Plaintiff complied with all requirements of the applicable compensation agreement during the relevant time period.

74. At all times during employment, Plaintiff relied on Defendant BELVEAL and Defendant BELVEAL's representations to be imputed to Defendant WASHLAVA.

75. At all times during employment, it was reasonable to believe that Defendants were authorized to make representations to Plaintiff with regard to the company's good financial condition, compensation, and other material terms of employment.

76. At all times the company's financial condition, and the amount of compensation was a material fact in the representations made by all Defendants and in the negotiations between Plaintiff and Defendant BELVEAL.

77. Defendants WASHLAVA and BELVEAL made fraudulent misrepresentations to Plaintiff regarding the company's financial condition, appropriate compensation for work performed, as well as the security of her employment status.

78. Defendants intended for their representations to induce Plaintiff to accept employment with WASHLAVA, and to then continue performing job duties for promised compensation for at least another four months while also intending to terminate her employment at a specific date and time in order to cheat her out of earned compensation.

79. Defendants WASHLAVA and BELVEAL knew that certain material terms of employment like financial condition, compensation, and duration of employment were communicated to Plaintiff falsely because Defendant BELVEAL is Defendant WASHLAVA's final decisionmaker with regard to staffing, compensation, restructuring, material terms and

conditions of any contractual agreement, and other substantial business decisions.

80. Defendants WASHLAVA and BELVEAL knew that certain material terms of employment like compensation were communicated to Plaintiff falsely because they had access to the company's budget, employee and financial records.

81. Plaintiff was harmed to her detriment by justifiably and reasonably relying on Defendants misrepresentations when Plaintiff continued to perform according to contracted terms in order to receive compensation in accordance with its terms and yet she did not receive such compensation.

82. Plaintiff has incurred damages including but not limited to unrealized equity interest and unpaid compensation from Defendant WASHLAVA and Defendant BELVEAL.

83. Defendants WASHLAVA and BELVEAL knew they never had the intention of paying Plaintiff for more than four months of earned compensation, knew that Plaintiff would never make millions as promised, and yet knew that Plaintiff would be leaving (and left) secure, well-paid employment she had maintained for nearly ten years for what Defendants misrepresented as a more lucrative and secure employment opportunity with WASHLAVA.

84. Each misrepresentation was a material term known by Defendants to be false.

85. Each misrepresentation was made for the specific purpose of inducing Plaintiff to rely upon it.

86. Plaintiff was justified in relying on Defendants' misrepresentations.

87. Due to the misrepresentations of Defendants WASHLAVA and BELVEAL Plaintiff has sustained injury as a direct result of her reliance. Plaintiff has experienced considerable hardship in loss of wages, continued unemployment, and has suffered substantial damages.

**WHEREFORE**, Plaintiff demands judgment against Defendants for:

    a. Equitable relief, including lost wages (including unpaid compensation and

unrealized equity interest);

  b. Compensatory damages, including but not limited to, and pain and suffering damages as allowable by law;

  c. Special damages;

  d. Punitive damages;

  e. Court costs and attorney's fees and costs and interest; and

  f. Any such other relief as the Court may deem necessary and proper.

## COUNT VI – UNJUST ENRICHMENT
## AGAINST DEFENDANT WASHLAVA and DEFENDANT BELVEAL

88. Plaintiff re-alleges paragraphs 1 through 87.

89. Defendants obtained benefit from Plaintiff for her duties performed and failed to adequately compensate her for those services per the terms of the parties' applicable agreed upon and/or contracted terms and conditions.

90. By terminating Plaintiff's employment through manipulative devices and failing to compensate Plaintiff as contractually required, Defendants have been unjustly enriched.

**WHEREFORE**, Plaintiff demands:

  a. Compensation for lost wages, benefits, and other remuneration;

  b. Reinstatement of Plaintiff to a position comparable to Plaintiff's prior position, or in the alternative front pay;

  c. Compensatory damages, including emotional distress, as allowable by law;

  d. Prejudgment interest on all monetary recovery obtained;

  e. All costs and attorney's fees incurred in prosecuting these claims; and

  f. All further relief as this Court deems just and equitable

**COUNT VII – CONVERSION
AGAINST DEFENDANT WASHLAVA and DEFENDANT BELVEAL**

91. Plaintiff re-alleges paragraphs 1 through 87.

92. Defendants misappropriated, diverted, and otherwise mismanaged earned monies to which Plaintiff has a possessory right.

93. As set forth above, by wrongly appropriating financial proceeds that contractually had become the property of Plaintiff, Defendants unlawfully converted Plaintiff's property for own use.

94. These above-described acts and practices of Defendants while employed by Plaintiff have injured and continue to injure Plaintiff.

95. Defendants' practices were self-serving and deceptive, and Plaintiff has suffered damages as a result.

96. Plaintiff is entitled to legal and injunctive relief as a result of Defendants' actions.

**WHEREFORE**, Plaintiff demands:

    a. Compensation for lost funds and other remuneration;

    b. Compensatory damages, including emotional distress, allowable at law;

    c. Prejudgment interest on all monetary recovery obtained;

    d. All costs and attorney's fees incurred in prosecuting these claims; and

    f. All further relief as this Court deems just and equitable

**COUNT VIII – FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
VIOLATION - AGAINST DEFENDANT WASHLAVA**

97. Plaintiff re-alleges paragraphs 1 through 90.

98. Section 501.204(1), Florida Statutes, provides that "unfair or deceptive practices in the conduct of any trade or commerce are hereby declared unlawful." The provisions of the act shall be "construed liberally to promote the protection" of the "consuming public and legitimate business

enterprises from those who engage in…deceptive or unfair acts or practices in the conduct of any trade or commerce." Section 501.202, Florida Statutes.

99. Defendant was, and at all times material to the allegations herein, engaged in "trade of commerce" as defined by the Section 501.203, Florida Statutes.

100. Defendant engaged in prohibited practices in an effort to increase its ability to compete in the business marketplace.

101. Defendant illegally failed to compensate Plaintiff as contractually required in an effort to increase its ability to compete in the business marketplace.

102. Defendant's business practices were unfair and deceptive, and Plaintiff has suffered damages as a result.

103. Plaintiff has suffered actual damages.

104. Plaintiff is entitled to legal and injunctive relief as a result of Defendant's actions.

**WHEREFORE**, Plaintiff demands:

    a. An order forcing Defendant to stop its unlawful practices or acts;

    b. Compensation for lost wages, benefits, and other remuneration;

    c. Reinstatement of Plaintiff to a position comparable to Plaintiff's prior position, or in the alternative front pay;

    d. A court declaration that Defendant's harmful practice is a violation of the statute.

    e. Compensatory damages, including emotional distress, allowable at law;

    f. Prejudgment interest on all monetary recovery obtained;

    g. All costs and attorney's fees incurred in prosecuting these claims; and

    h. All further relief as this Court deems just and equitable.

## COUNT IX – ACCOUNTING
## AGAINST DEFENDANT WASHLAVA AND DEFENDANT BELVEAL

105. Plaintiff re-alleges paragraphs 1 through 104.

106. Before the institution of this action Plaintiff and Defendants had business transactions between them.

107. By way of example only, Plaintiff has an unrealized equity interest, and has made numerous requests for an accounting to determine the exact amounts due and owing from Defendant.

108. In addition, Defendants have made several varying representations of financial condition, statements regarding fluctuating and intermingled assets, as well as WASHLAVA's potential status as an acquired entity, or a soon to be defunct entity, or an entity with a changed corporate name.

109. Due to very real appearances that Defendant BELVEAL usurped assets of Defendant WASHLAVA, an accounting of both Defendants is necessary in order to determine a true financial condition directly impacting the value of Plaintiff's equity stake, as well as any concern that Defendants lack financial resources to actually compensate Plaintiff as legally required.

110. To date Defendants have failed to provide an accounting and have also failed to remit payment to Plaintiff.

**WHEREFORE,** Plaintiff demands:

    a. Compensation for lost wages, including severance, benefits, and other remuneration;

    b. Reinstatement of Plaintiff to a position comparable to Plaintiff's prior position, or in the alternative front pay;

      c.      Compensatory damages, including emotional distress, allowable at law;

      d.      Prejudgment interest on all monetary recovery obtained;

      e.      All costs and attorney's fees incurred; and

      f.      All further relief as this Court deems just and equitable

## JURY TRIAL DEMAND

Plaintiff demands a jury trial on all issues so triable.

Dated September 22, 2020.

Respectfully submitted,

FERNEE KELLY LAW

s/ *Charlotte Fernée Kelly*
Charlotte Fernée Kelly, Esq.
FBN: 0090105
Fernee Kelly Law
1228 E 7th Ave, #200
Tampa, FL 33605
Tel: (813) 315-3981
charlotte@ferneekellylaw.com